Arthur A. NELSON, Petitioner—Appellant,

v.

State of WASHINGTON; Maggie Miller–Stout, Respondents—Appellees.

No. 04–35383.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 24, 2006.

Filed March 6, 2006.

Nancy D. Tenney, Esq., Federal Public Defender's Office, Seattle, WA, for Petitioner–Appellant.

Gregory J. Rosen, Esq., Office of the Washington Attorney General, Olympia, WA, for Respondents–Appellees.

Before: RAWLINSON and CLIFTON, Circuit Judges, and MARSHALL,* District Judge.

* The Honorable Consuelo Marshall, Senior United States District Judge for the Central District of California, sitting by designation.

**MEMORANDUM ***

Arthur Nelson appeals the denial of his habeas petition based on a claim of ineffective assistance of counsel. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253, and we review the district court's denial of the petition *de novo. Taylor v. Maddox,* 366 F.3d 992, 997 (9th Cir.2004). We reverse and remand to the district court with instructions to grant the petition.

Nelson's ineffective assistance of counsel claim consists of two related strands: that his appointed counsel, Thomas Earl, was deficient for failing to investigate and challenge the state's evidence that the child had been sexually abused (i.e., that any crime had been committed), and that the attorney was deficient for failing to investigate and present evidence that someone other than Nelson was the perpetrator of the abuse. The State argues that the first strand of Nelson's ineffective assistance claim is procedurally defaulted. Nelson argues that it was not defaulted and, alternatively, that it can be considered under another theory. We need not resolve that issue because we are persuaded that Nelson was sufficiently prejudiced by the ineffective assistance he received regarding the identity of the perpetrator that he is entitled to habeas relief.

Under the Anti–Terrorism and Effective Death Penalty Act (AEDPA), a habeas petition cannot be granted unless the petitioner can demonstrate that the state court adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). That standard is met in this case. The denial by the Washington Court of Appeals of Nelson's ineffective assistance of counsel claim was based upon an unreasonable determination of fact and constituted an unreasonable application of clearly established federal standards for ineffective assistance of counsel, as determined by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

■ The Washington Court of Appeals adopted the Washington Superior Court's factual determination that the performance of Nelson's counsel was not deficient because Nelson had not presented him with leads on potential witnesses who could explain that the alleged victim had referred to other men by the name of "daddy." This was an unreasonable determination of fact.

The reference hearing held in Washington Superior Court could not be counted upon to produce reliable results because Guillermo Romero, the lawyer appointed to represent Nelson in connection with that hearing, was himself tied professionally to Thomas Earl, Nelson's original trial counsel, whose competence and performance on behalf of Nelson was the subject of the hearing. Romero and Earl (both of whom have since been disbarred) both provided legal services as appointed counsel under a contract held by Earl's brother. Earl supervised Romero. To say that Romero had a conflict of interest puts it mildly. Romero had an affirmative motivation not to develop or present evidence at that reference hearing in support of Nelson's claim, because doing so meant demonstrating that Earl and the same organization which employed Romero had provided incompetent and ineffective services. Zealous representation of Nelson at the hearing could have threatened both Romero's future employment by Earl and Earl's contract with the county to provide appointed counsel. The incentive for Romero not to foul his own nest was obvious, and there is evidence that Romero did not pursue or present all the evidence that was available in support of Nelson's petition. It is true that Nelson was not entitled to effective assistance of counsel in post-conviction proceedings, so that is not a ground for granting him habeas relief. *See Campbell v. Wood*, 18 F.3d 662, 667 (9th Cir.1994) (citing *Pennsylvania v. Finley*, 481 U.S. 551, 555, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987)). But that does not guarantee that the findings which resulted from the proceedings were reliable, or shield those findings from attack based on a conflict of interest. *See Taylor*, 366 F.3d at 999 (noting that intrinsic challenge to factual determination made in state court proceedings under section 2254(d)(2) may be based on the claim that the process employed by the state court is defective).

Moreover, the findings yielded by the reference hearing are contradicted by the record that was developed there. The Washington Superior Court's findings that Nelson's counsel was not given any leads to develop evidence on the identity of another perpetrator and that Nelson did not urge upon any of the people he talked to that the child was referring to someone other than himself by use of the word "daddy" are belied by the testimony of both Nelson and his mother to those very facts, as well as by the investigator's report, which identified some of the evidence that should have been available had Nelson's trial counsel performed in a competent manner. The findings constituted an unreasonable determination of the facts in light of the evidence. *See Taylor*, 366

F.3d at 1001 ("[T]he state-court fact-finding process is undermined where the court has before it, yet apparently ignores, evidence that supports petitioner's claim.").

The Washington State Court of Appeals' denial of Nelson's ineffective assistance of counsel claim, which largely rested upon the flawed factual findings of the Superior Court, also constituted an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d)(1). *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), is the clearly established constitutional standard for establishing a Sixth Amendment violation based on ineffective assistance of counsel. Under *Strickland,* a petitioner must first show that his counsel's performance was deficient, meaning "outside the wide range of professionally competent assistance." *Id.* at 690, 104 S.Ct. 2052. Petitioner must then show that the deficient performance prejudiced his defense. That is, he must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 693–94, 104 S.Ct. 2052. The benchmark for assessing claims under *Strickland* is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Nunes v. Mueller,* 350 F.3d 1045, 1051 (9th Cir.2003). Under any reasonable application of *Strickland,* Nelson's counsel was ineffective.

■ The district court found the performance of Nelson's counsel to have been deficient, focusing on the facts that he only met with Nelson for a total of about twenty-five minutes, did not review photographs taken by the examining physician prior to trial, did not call any witnesses at trial, did not respond to multiple inquiries by Nelson and his mother as to the status of the defense, and did not investigate the accuser or her boyfriend. There is no evidence that Nelson's counsel conducted any investigation whatsoever, except to determine that the accuser's boyfriend had never been convicted of a sex offense in Oregon. We agree with the district court's analysis that the performance of Nelson's counsel falls well outside the wide range of professionally competent assistance to which Nelson was entitled.

■ We disagree, however, with the district court's conclusion that the deficiencies in Nelson's counsel's performance did not prejudice his defense. Had Nelson's counsel employed reasonable efforts, he would have found that the primary accuser (Nelson's daughter and the child's mother) had been hospitalized for mental health treatment, was described as a "sociopath" and intellectually deficient, was involved with drugs, had lived with a succession of boyfriends (at least one of whom had been identified by the child as having sexually assaulted her), and had a motive to fabricate allegations against Nelson to regain custody over the child for the purpose of obtaining welfare benefits. Nelson's counsel would have been aware of and could have presented other potentially favorable testimony from the child's treating physician, from Nelson's mother and former sister-in-law, and from Brian Dunbar, among others. Having lived with Nelson and the child during a relevant period, for example, Dunbar could have testified that the girl referred to several different men as "daddy," highly pertinent since an inference that Nelson was the assailant identified by the child as "daddy" was critical to Nelson's conviction. Dunbar could also have testified that the only time he ever observed bruises or marks on the child was when she returned from being in her

mother's care, and that she seemed to dread spending time at her mother's house.

In concluding that Nelson had not been prejudiced by Earl's incompetent performance, the district court placed emphasis on a statement Petitioner made to investigating authorities that he supervised the child closely and limited access to her by others. The inference drawn was that the crime could not have been committed by anyone other than Nelson. The context of that statement, however—made by a "distraught"[1] grandfather who gained custody of a child as the result of his daughter's inability to care for her and then was confronted with a claim that the child had been the victim of abuse while in his custody—should caution against putting too much weight on it. It cannot be surprising that a person in that position would insist that he looked after the child properly. There was evidence that the statement may not have been literally true, that the child was not always within Nelson's supervision. Notably, evidence could have been presented that the child often spent time at her mother's house, sometimes overnight. Evidence of the child's visits with her mother (and with men her mother associated with) could have been provided by Nelson himself, his mother, his aunt, and Dunbar.

In weighing the evidence the jury never heard against the evidence that supported Nelson's conviction, the district court also based its determination that Nelson had not been prejudiced on the fact that these supplemental witnesses could have been challenged by the state in various ways. It is true that each witness presented by Nelson's counsel would have been subject to cross-examination. Had Nelson's counsel put on a competent defense, though, so too would the state's witnesses have been

challenged. It is also true that the state possessed and could have presented evidence which conflicted with the evidence that could have been presented in support of Nelson's defense. The testimony of the additional witnesses would not necessarily have provided Nelson with an iron-clad defense, but that is not the standard for prejudice under *Strickland*. Had the jury heard all of the testimony, properly cross-examined by both parties, it appears to us that there would have been a reasonable probability that the jury would have been left with reasonable doubt and thus would have returned a different verdict.

We therefore conclude that Nelson's counsel provided ineffective assistance that prejudiced his defense, and that the state court determinations to the contrary were unreasonable. *Cf. Riley v. Payne*, 352 F.3d 1313, 1320 (9th Cir.2003) (prejudicial error to leave out witness testimony that would have been consistent with defendant's account of shooting and would have "created more equilibrium in the evidence presented to the jury") (internal citations omitted); *Lord v. Wood*, 184 F.3d 1083, 1088 (9th Cir.1999) (prejudicial failure to present possible alibi witnesses where the state's case against defendant was "strong but not ironclad" and defense consisted entirely on casting doubt on state's case); *Hart v. Gomez*, 174 F.3d 1067, 1072 (9th Cir.1999) (prejudicial failure to introduce records corroborating presence of witness on dates of alleged abuse, where defendant had admitted to molesting victim on prior occasions).

We reverse the decision of the district court and remand with instructions to grant a conditional writ of habeas corpus, ordering Nelson's release unless the state of Washington notifies the district court that it intends to retry Nelson and actually

---

1. This was how he was described by the investigator to whom he made the statement.

commences Nelson's retrial within a reasonable period of time.

REVERSED AND REMANDED.

RAWLINSON, Circuit Judge, concurring.

I concur in the result.

---

* This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.